Good morning, Your Honor. May it please the Court. My name is Thomas Bothwell. I'm appearing on behalf of the appellant, Donna Fleenor. Good morning, Counsel. As Your Honors are quite well aware, this is an appeal of a Social Security Administration determination that Ms. Fleenor was not disabled. The final decision, which is that which is subject to judicial review, is a decision of the Administrative Law Judge. We have asserted error to a variety of aspects of that Administrative Law Judge decision. They may be clumped into two primary categories with respect to what those errors are all about. All but one of the errors relates to the severity of Ms. Fleenor's impairments and opinions that relate to that, as well as her testimony. So what do you think is the strongest argument on which you allege that demonstrates error by the ALJ? Your Honor, I... We're familiar with the general basics of these cases. So just, if you will, your clock is ticking down, and I want you to tell me, what is your, what do you think is the strongest argument here that warrants reversal and remand? Your Honor, if I may, and I'm not trying to avoid answering your question, I would like to try to point out two different kinds of errors. Sure. The one is with respect to the weight given to treating physician opinion. And I would suggest that this case is relatively, got relatively diced quite finely by the Administrative Law Judge. This is a gal for 20 years who did work, and the ALJ determined that she was not capable of returning to that kind of work that she had performed for three different jobs, actually, that she had performed for more than 20 years. The ALJ, after reaching that step, then there's only one step remaining between her and the finding of disability, and that is whether there are other jobs that she can perform. Ironically, the jobs that the ALJ identified as job possibilities were jobs that were more physically demanding than what she did. I'm sorry, Your Honor, I don't mean to stray from your question. We have to establish that there was error. Yes, sir. And what's the error? Failure to give proper weight to Dr. Atterbury and Dr. Pryor, her two treating physicians. Is that the only thing that should control here, or are there other elements that should control, simply because they are? Another, pardon me, another aspect of that is the issue of the claimant's credibility. All six doctors who offered opinions concerning Ms. Fleener's problems here indicated that she was being credible with respect to her complaints of pain, and that her medical problems were the kind which would cause someone to have pain. This isn't just Dr. Several of these, at least one, I think two, said that she needed to be detoxed from opiate addiction. Isn't that a credibility problem? Your Honor, as of when she was, the person who offered that opinion was a pain clinic to which she had been referred by Dr. Atterbury. At the time she went to that pain clinic, she was taking nine different prescribed medications, all of which had been prescribed. There is absolutely not a scintilla of evidence in this case that she was taking her medications in any way other than as prescribed. So when they referred to her having opiate issues, they were referring to medication which she had been taking on a prescribed basis, and they wanted her to stop. They recommended a kind of combined detox program and getting her on to two... Did the ALJ rely on her opiate problem as a basis for discrediting her? Your Honor, in my opinion, she did in substantial part. Much more importantly, and here's the other issue that I hadn't gotten to yet, the ALJ, with not one scintilla, not one iota, not any evidence whatsoever in support of this finding, found that Ms. Fleener was dependent upon marijuana. There is no evidence in this record whatsoever that she has ever used marijuana let alone that she was dependent. I think, and if I understand the government's briefing properly, they have not contested, they aren't contesting that this was her. The issue then becomes is that harmless her for an administrative law judge to find that a claimant whose credibility is the crux of this case in so many ways, but the credibility and her description of the severity of her pain, it's the crux of this case. And when the ALJ says she has a marijuana dependence, that she is dependent upon marijuana, that is classified, I'm not trying to, I'm not meaning to be facetious here, but when marijuana is in the same category as heroin and LSD, and an administrative law judge with no evidence whatsoever to support this in her decision says she's dependent upon and has a marijuana dependence issue, I'm just asking this Court to consider that that is not reasonably, should not reasonably can be construed as harmless her. Well, the emphasis that I find here is more, as he states on page 9, he also assessed a claimant, Dr. Robertson, with opioid dependence, not marijuana dependence, deconditioning, deconditioning, which would arise from this kind of dependence on drugs, deactivation, which would go along with that, and disability conviction, not sure what that is, I think we call that secondary gain. And then he goes on to say that Dr. Moore stated that the claimant was dependent on opioid and sedative medication, so there certainly seems to be an emphasis here, as I read this, on the opioids and the benzodiazepines, which we know she was on extensively. Your Honor, where we're coming from is they're two separate animals. Number one, just to point out again, the opioid dependence was a determination by one doctor that she was taking an inappropriate amount of medication that had been prescribed by another doctor. But I also want to point out that Ms. Fleener totally agreed, it's in the pain clinic reports, where I think most of those diagnoses came from, it's in the pain clinic records that Ms. Fleener agreed to their program of trying to detox from all these nine different medications and try to get on, if there were one or two other medications that would not be so problematic, but I agree that there are all those diagnoses in there, Judge, but there's also this finding that she was dependent upon marijuana. And either we put blinders with respect to that, just out of nowhere, out of the blue, off the wall, I don't mean to be disrespectful saying that, but when the ALJ says with no evidence whatsoever she's dependent upon marijuana, when it's a felony, a federal felony, we're talking about a federal program here, to be using marijuana, to say, surely we're confident that that was inconsequential to the finding of non-disability. Let me ask you, even if there is substantial evidence, even if we were to conclude that there's substantial evidence to support the adverse credibility finding, but there's maybe some problem with the way in which the ALJ treated the treating physicians' opinions, what does that get you? They are two separate things. The credit as true doctrine, where you credit, it can be applied in two different areas. One is with respect to the opinions of treating physicians. If they are determined, if it's determined that they should be credited as true, then that can support a relief of reversal of the decision and immediate payment of benefits. Separate from that possibility is the determination that the claimant's testimony should be credited as true. And that, too, can be a basis for the relief of reversal and immediate payment of benefits. So the relief that we're seeking here, perhaps you should have said this at the outset, is reversal of the unfavorable decision. We're asking the courts to consider reversal with immediate payment of benefits, getting there by way of the credit as true doctrine, either by way of the treating physician opinion or claimant's testimony, or alternatively, remanding if for no other reason than this issue of there is clearly error. You're the judges, but I don't see how it can be fairly, we're submitting that it should not be fairly held, that it can be fairly held, that accusing someone, finding that someone is dependent upon a Schedule I, illegal, federally illegal drug is harmless harm. Okay. Thank you, counsel. Thank you. I'll give you a minute for rebuttal. Thank you. All right. Good morning, Your Honors. May it please the Court, David Burdett, representing the Commissioner, the Acting Commissioner, Ms. Berryhill. First of all, I apologize for the disruption this morning. Thank you for the flexibility. I apologize to Mr. Bothwell. Thank you for taking it in this order. Mr. Bothwell correctly indicated sort of the two heads of the argument, which are the credibility and the total opinion analysis. And I think that those are, in general, pretty routine Social Security disability case matters, except for this issue of marijuana dependence that came to the record. Before we get to marijuana dependence, Mr. Burdett, would you point out to me where in the administrative record there's any evidence that contradicts the opinions of Atterbury and Pryor as to total disability caused by a horrific cervical operation with findings of osteophytic growth on the cervical spine and in a radicular pattern which corresponds to the level of injury? Yes, Your Honor. I think that she was the victim of a botched surgery, and that was bad. However, the evidence that you're looking for, I think, is the evidence that the ALJ pointed to, her examining physician, setting aside the state agency physicians, but one of her examining physicians. Yes, but I'm asking a different question, Mr. Burdett. Is there any evidence to contradict Pryor and Atterbury's opinion that she was totally disabled in the records of Atterbury and Pryor? Or are you solely relying upon contrary evidence by examining but not treating doctors? We're solely relying on the examining doctors, Your Honor, with regard to the medical evidence. And that would be Dr. Robertson at 666 to 669 of the record, and the examining psych, Dr. Moore at, well, exhibit 19F. With respect to Atterbury and Pryor's decision, those are the records that we think the ALJ pointed to that fairly contradict those records. What is the objective medical evidence in this case that she has a medical problem consistent with her symptoms? Uh, the fact, I think the fact, Your Honor, that she did go through this botched surgery in March, well, maybe not botched, but she went through this surgery in March of 2012 that Dr. Atterbury was called in to complete because the doctor who started it was not able to complete it for whatever reason. And since that time, she has had this, to some degree, arm paresthesia that is consistent with some degree of limitation. Well, I'm trying to understand what test was done, what radiography was done, what was done to establish the etiology of that. And the surgery was performed here, obviously under very adverse circumstances, but the surgery that Dr. Atterbury performed is a cervical dystachyme infusion. And it's unclear to me what is the increased morbidity as a result of that and what is the basis for determining that in this case based on something other than the complaints of pain by the claimant. Well, that's just it, Your Honor. It's kind of unclear to me, too. My reading, and my understanding, is that Dr. Atterbury is crediting her complaints of pain to the degree that she asserts them and believes that because she went through a set of circumstances with this surgery that could have caused them, that that is... He also had a medical opinion as well. Yes. He listened to her, but he also said this could be consistent with this kind of surgery. Correct. All the way down to the nerve root, as I understood his opinion. I think that's right, Your Honor. I think that's right. Now, I think that the ALJ's analysis also includes the opinion of the examining physician, Dr. Robertson, who said that he would anticipate that she could improve to at least a sedentary to light level of exertion. Are you relying at all on the April 2013 nerve conduction study, which shows no evidence of carpal tunnel syndrome, cervical radiculopathy, or ulnar neuropathy? We are, Your Honor. I think it's all of a piece. I think that Dr. Atterbury's records and Dr. Atterbury's records as late as October of 2013 noted an absence of objective medical evidence to explain her chronic pain. So, getting back to Judge Royal's question, and this is why, Judge Pius, I think that Dr. Atterbury is looking at it, and Mr. Buth will have the opportunity to correct my characterization, but I think that Dr. Atterbury is looking at it and saying, that is plausible, but there's not objective medical evidence. In the October of 2013 Atterbury opinion, Dr. Atterbury said there's no electrodiagnostic evidence of cervical radiculopathy or ulnar neuropathy. Then you're changing your position from that with which you opened your argument, which was that you were relying solely on examining physicians to contradict Atterbury's opinion. Now you're relying on Atterbury's October 2013 statement, no objective evidence, which sort of contradicts his disability. I beg your pardon, Your Honor. I spoke imprecisely. Dr. Atterbury's opinion, what I am trying to say is that Dr. Atterbury's opinion is plausible, and we, it is contradictory to what was predicted by Dr. Robertson and Dr. Moore, the psychologist, but Dr. Atterbury's opinion seems to be equivocal in that as late as October of 2013, he says there's no objective evidence, and I don't, I'm trying to walk the line here because I don't want to mischaracterize what Dr. Atterbury's position is. He does believe his patient, okay, that is clear, but at the same point in October of 2013, which is pretty near the end of the record because the record here really only extends from March of 2012 through the winter of 2013, he said there's no evidence, no objective evidence of the radiculopathy, and I think that was why he referred her to the pain clinic. With respect to the credibility of the claims, it's a pretty simple, it's a pretty ordinary in social security disability case practice citation of the objective medical evidence which the ALJ runs through Dr. Atterbury's opinion, Dr. Pryor's opinion, Dr. Robertson's and Dr. Moore's, and says that doesn't seem to me to support this degree of claims of disabling pain of right arm paresthesia, for a left-hand dominant person, by the way. And looks at some of her activities of daily living and says the objective evidence, my interpretation, the ALJ says, my interpretation of the objective medical evidence and her activities of daily living make it seem to me that she is not as disabled by these admittedly existing impairments as she believes. With respect to... So what extent did he rely on her sort of dependency on opioids? If at all. The dependency on opioids is not a credibility factor in itself, but it is a factor in evaluating the objective medical evidence in that it impacts whether this is a true, if you will, disabling physical impairment. And with regard... Dependent on opioids? The ALJ did find that she was dependent on opioids. And I want to get to the... I didn't think about this when I was looking at the case, but isn't there another like fifth step or sixth step when alcohol, addiction, or you look at the claimant first without looking at the addiction, and that's a separate step and a whole different analysis that takes place? Yes, you are. I've got 30 seconds, but briefly. In cases where a person is disabled in material part by drug and alcohol addiction, then the ALJ goes through the analysis, finds that person disabled, and then goes back and says, would they be disabled but for their drug and alcohol addiction? And so it's a double analysis. First they're disabled, second, now we go back and look at it again. But that does not apply to cases like this where the ALJ says in the first instance, even including the effects of opioids, the person is not disabled. So this is not one of those cases, if that makes sense. Okay, yes. And I just want to say briefly with regard to the citation of marijuana, because I think that's important and that was an error, but that's a harmless error. The reason it is a harmless error is because that's cited one time mistakenly at page 71 of the record, which is page 3 of the ALJ's decision, and never mentioned again. Basically pages 6 through 9 of the administrative decision are where the ALJ goes through the credibility finding, and marijuana is not cited to there. So it crept in in the laundry list, if you will, of impairments. She has right side pain, she has opioid dependence, et cetera. Marijuana dependence crept in there, but it is not cited to in the ALJ's actual reasoning that's developed later in the decision. For discrediting her. Correct. That's the way I read it. Not cited to as a basis for the credibility finding, and that's why it is an error. Mr. Bothwell is correct, but it's a harmless error because the reasoning is not built on that. Okay. Let's see if I have any other questions. Nope. Okay. Thank you. Thank you again, Your Honors. I didn't get a minute there to make any rebuttal on any of the points raised by counsel. Yes. Yes, sir. Thank you. I would like to follow up on, I think it was Your Honors' question with respect to whether there was any evidence to support, other than her self-reporting, to support her complaints of pain. Again, I was saying six different doctors said yes, there was. I'm just quitting very quickly from a non-examining state doctor upon whom the ALJ relied in part. Is it reasonable that Ms. Flaner's impairments can reasonably be expected to produce the individual's pain or symptoms? Answers yes. This is all cited on page 23 of my memorandum. Dr. Wolfe answered the exact same question, yes. Her problems could reasonably be expected to cause the symptoms of pain.  When he was, first he noted the terrible pain, that's his word, terrible pain this woman has been suffering from since this past surgery. The judge then asked Dr. Kendrick, you said it was terrible pain, could her terrible pain be reasonably caused by objective signs and symptoms of medical problems she has? The doctor said yes. This isn't a case just based upon subjective symptoms. And just returning again to this issue, if we were, as I say, marijuana is in the same classification as, for example, heroin and LSD. To throw out there in a decision, this person is dependent upon heroin, but that doesn't make any difference to my decision, is I think without the judge saying, I didn't rely upon that at all. The judge didn't say I did not rely upon that at all. If for no other reason, I think this case should be reamended for that. Judge Royal has a question for you. I have a question about something you mentioned earlier. You said in the ALJ's report about residual functioning capacity that the jobs that he or she said that your client could do, marker production line and table worker, are all more difficult than the job she worked at for 20 years. Yes, sir. What's the basis of that? The basis of that is the testimony of the vocational expert at the hearing. When he was asked by the judge to describe her past jobs, Ms. Flinger's past jobs that she'd had for 20 plus years, there was an assistant accounting position, an inventory control clerk position, and something else. He described all three jobs as what they call sedentary, which is my kind of job. Sit on your, sit all day. The jobs which he identified in response to the judge's question, well, if a person had this other physical capacity, are the jobs that the person could do. They're called light. It might be an odd use of terms, but light work is regarded as more physically demanding than sedentary. All three of the jobs which this judge said Ms. Flinger could do, but she could not return to any of her past jobs according to the judge, and we agree with that finding, are in the light category. They are more physically demanding than the jobs Ms. Flinger had for 20 plus years before she developed these other health problems. Thank you. Okay. Thank you. That's all. Okay. Thank you. Thank you, counsel. Oh, that's okay. Don't worry. Okay. Thank you, counsel.
judges: Paez, Bea, Royal